# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STRAIT SHIPBROKERS PTE. LTD. )<br>)<br>1 North Bridge Road )<br>#22-06 High Street Centre )<br>Singapore 179094 )<br>)<br>MURTUZA MUSTAFA MUNIR BASRAI )<br>)<br>1 North Bridge Road )<br>#22-06 High Street Centre )<br>Singapore 179094 )<br>)<br>     *Plaintiffs*, )<br>)<br>v. )<br>)<br>ANTONY BLINKEN, in his official capacity as the )<br>Secretary of State, )<br>)<br>2201 C Street, N.W. )<br>Washington, D.C. 20520 )<br>)<br>U.S. DEPARTMENT OF STATE )<br>)<br>2201 C Street, N.W. )<br>Washington, D.C. 20520 )<br>)<br>JANET YELLEN, in her official capacity as )<br>Secretary of the Treasury, )<br>)<br>1500 Pennsylvania Avenue, N.W. )<br>Washington, D.C. 20220 )<br>)<br>U.S. DEPARTMENT OF THE TREASURY )<br>)<br>1500 Pennsylvania Avenue, N.W. )<br>Washington, D.C. 20220 )<br>)<br>     *Defendants*. )<br>_____ ) | Civil Action No. _____<br><br><br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

Plaintiffs Strait Shipbrokers Pte. Ltd. ("Strait Shipbrokers" or "the Company") and its Managing Director, Murtuza Mustafa Munir Basrai (collectively, "Plaintiffs"), through undersigned counsel, respectfully seek declaratory and injunctive relief and allege as follows:

## INTRODUCTION

1. This action challenges the Trump Administration's unlawful designation of both Plaintiffs as "Specially Designated National" ("SDN") on or around October 29, 2020 by the United States Department of State ("State Department") and by then-Secretary of State, Michael Pompeo, predecessor to the current Secretary of the State and named defendant, Antony Blinken. As a result of the State Department's unlawful designation, the U.S. Department of the Treasury's Office of Foreign Asset Control ("OFAC") issued a press release on October 29, 2020 announcing that both Plaintiffs were placed on OFAC's SDN list. *See* Exhibit 1. OFAC administers the sanctions program. OFAC's press release announcing that Plaintiffs have been designated as SDNs has been widely covered in the press. *See* Exhibit 2. That designation by the State Department prohibits U.S. persons from engaging in any transactions with the sanctioned parties and, by operation of law, blocks or "freezes" any property or interests in property of the sanctioned parties within the possession or control of U.S. persons. The designation caused the Company's Citibank account in Singapore to be frozen, caused the cancellation of the Company's group insurance policy, harmed Plaintiffs' ability to engage in business with U.S. persons, and damaged Plaintiffs' reputation around the world and ability to engage in business generally. As explained below, Plaintiffs' designation by the State Department is unlawful and should be enjoined. By failing to provide a reasoned explanation for the designations, and by making designation decisions that necessarily run counter to any accurate evidence before the agency, the State Department engaged in arbitrary and capricious

decision making, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Moreover, by failing to provide Plaintiffs with notice of, or an opportunity to challenge, the basis for the designations, Defendants have deprived Plaintiffs of due process of law, in violation of the Fifth Amendment.

2. Neither the State Department nor OFAC has published the designation of either Plaintiff in the Federal Register and neither has publicly explained the factual basis for the designation. The State Department has made no public statement concerning the designations whatsoever. The October 29, 2020 press release by OFAC merely stated that the designations were pursuant to Executive Order 13846, but provided no factual basis for why those designations were made pursuant to the Executive Order. *See* Exhibit 1.

3. On December 7, 2020, Plaintiffs sought emergency relief from OFAC through a petition for delisting and a request for a general license that would allow U.S. persons to engage in business with Plaintiffs throughout the delisting process. In doing so, Plaintiffs also sought a copy of the administrative record for the designation of both Plaintiffs. To date, more than seven-months later, that petition still has not been decided and Plaintiffs have not received a copy of the administrative records for their designations. Thus, no clear basis for the designation has been provided.

4. On January 29, 2021, the State Department provided a partial explanation for the designations through a questionnaire, stating: "we are able to provide additional detail about the factual basis for the Department of State's designation of Strait Shipbrokers pursuant to section 3(a)(ii) of Executive Order 13846. Strait Shipbrokers brokered the hiring of the M/T Lady Maris from early October 2019 to early November 2019. In that time, the M/T Lady Maris shipped Iranian petroleum products to China. Please describe in detail Strait Shipbrokers' role, if any, in

this transaction." This was the first confirmation to Plaintiffs that their designations had been made by the State Department and were related to the M/T Lady Maris.

5. On February 16, 2021, Plaintiffs responded to the questionnaire explaining that they had not brokered the sale of the M/T Lady Maris, identified who they understood from a public records search to be the ship's owners, and explained they had "not conducted business with any of these persons or entities either."

6. On March 17, 2021, the State Department sent Plaintiffs a second questionnaire. The State Department clarified that "Strait Shipbrokers was designated for its role in the chartering of the M/T Lady Maris from early October 2019 to early November 2019," not its sale, and asked for information about the Company's role in this regard. In addition, the State Department suggested a new basis for the designation, explaining: "We have additional information suggesting that Strait Shipbrokers played a role in voyages that involved Iranian petroleum products. Strait Shipbrokers facilitated the voyage of the M/T Star Sino (IMO: 9174610; previously named M/T Falcon Victory) for loading of petroleum products in Iran in October 2019," and asked questions about the Company's role.

7. On April 2, 2021, Plaintiffs again confirmed to the State Department that "the Company has not conducted business relating to the M/T Lady Maris." Plaintiffs also advised the State Department that the Company did not broker the sale of use of M/T Star Sino or M/T Falcon Victory.

8. Thus, to date, neither the State Department nor OFAC has provided Plaintiffs with any evidence that they have violated U.S. sanctions on Iran – or met the criteria under the Executive Order for designation as an SDN. The most the State Department has done was suggest that the Company had some role in brokering two ships – the M/T Lady Maris and M/T

Star Sino (f/k/a M/T Falcon Victory) – with which Plaintiffs have confirmed they have done no business. No evidence or reason for believing the contrary has been provided to Plaintiffs.

9. As a result of the designations, Plaintiffs' reputation and livelihoods were immediately and irreparably harmed. The Company's ability to remain a going concern, able to pay Mr. Basrai and its employees, is threatened by the designation.

10. Because Plaintiffs were designated by the Trump Administration's State Department and its leadership, acting in their official capacity, Plaintiffs only recourse is to seek relief against Defendants, including the current leaders of the State Department and Treasury Department, as administrator of the sanctions program and the SDN List. Plaintiffs accordingly request declaratory and injunctive relief, preliminarily and permanently enjoining Defendants from implementing or enforcing Plaintiffs' designations as SDNs.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1361; and 5 U.S.C. §§ 701-706.

12. Sovereign immunity is waived by 5 U.S.C. § 702.

13. Mandamus relief is authorized by 28 U.S.C. § 1361.

14. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, respectively, Federal Rules of Civil Procedure 57 and 65, and the inherent equitable powers of a United States District Court.

15. Venue is proper in this District under 28 U.S.C. § 1391(e)(1).

## THE PARTIES

16. Plaintiff Strait Shipbrokers was formed as a Singapore corporation, with its registered place of business at 1 North Bridge Road, #22-06 High Street Centre, Singapore 179094. The Company has done extensive business with U.S. companies, including Ardmore Tankers, Exxon Mobil, Fairfield Carriers, ICC Chemical Corporation, Penfield Marine, Stolt Tankers, Tricon Energy, and Vinmar International.

17. Plaintiff Mr. Basrai is the Managing Director of Strait Shipbrokers.

18. Defendant Antony Blinken is the Secretary of State and the senior official at the State Department. He is sued in his official capacity.

19. Defendant U.S. Department of State is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1).

20. Defendant Janet Yellen is the Secretary of the Treasury. She is sued in her official capacity.

21. Defendant U.S. Department of the Treasury is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1).

## FACTUAL ALLEGATIONS

### *Background Regarding the Plaintiffs and their Operations*

22. Plaintiffs' operations as shipbrokers in the maritime industry involve acting as intermediaries between ship owners and cargo owners (or cargo charters), as well as negotiating freight and demurrage. They may act for one principal and occasionally as the sole broker between two contracting parties. Plaintiffs also offer clients information on market activity that might not otherwise be available. Plaintiffs do not, however, arrange port calls, bunkering, and ship-related insurance. Further, Plaintiffs do not arrange for cargo-related insurance. Those

tasks remain with the ship owners and the cargo owners, respectively. Plaintiffs also do not accept third party payments (either as remitter or beneficiary).

23. Plaintiffs do not require, nor need, cargo country of origin information to successfully act in their roles as a broker. In fact, the contracts between ship owners and cargo owners are negotiated among themselves, and not the brokers. Accordingly, and as is the case here, it is not uncommon for brokers to lack visibility into the terms of those contracts, and the ability to demand information or documents concerning those contracts is beyond the control of the Company. Generally, a broker does not inquire about the cargo country of origin during negotiations. A ship owner and charter party likely would either decline to respond to such a query or seek another broker as industry practice is not to collect information at this level of detail.

24. Generally, the specific port details are also not required by brokers where ports are relatively close together. In these instances, what is relevant for purposes of determining demurrage is the geographic range of ports (*e.g.*, Middle East Ports, Caribbean Ports, etc.). Theoretically, "Middle East Ports" could include an Iranian port, but it could also include countless other regional ports. The point for the port reference – either specifically or by range – is to allow the broker to price demurrage costs. For example, a broker can price demurrage between Caribbean Ports and Middle East Ports. In some instances, however, a ship owner may request that the broker assist in any disputes between the owner and the charter parties, which may, but not always, lead to visibility of cargo origin and/or bills of lading that are maintained by the charter party.

25. Because of the limited and rare visibility into the details of underlying charter transactions, including with respect to cargo origin and port destinations, there is no basis for any

suggestion that Plaintiffs engaged in a transaction for the purchase, acquisition, sale, transport, or marketing of petroleum products from Iran. Plaintiffs did not knowingly engage in any transaction involving Iranian origin petroleum products, nor are Plaintiffs aware of having engaged in any such transaction.

## THE DESIGNATION

26. On August 6, 2018, President Trump signed Executive Order 13846 "Reimposing Certain Sanctions With Respect to Iran" (the "Executive Order"). Section 5(a) of the Executive Order pertains to "Menu-based" sanctions as designated by the State Department.

27. Plaintiffs learned for the first time of their designation as SDNs from OFAC's October 29, 2020 press release, which did not indicate why the Company and Mr. Basrai were designated. *See* Exhibit 1. To date, neither the State Department nor OFAC has published the designations in the Federal Register or offered any public explanation for them.

28. As explained above, the State Department has confirmed to Plaintiffs in writing that the designations were made pursuant to Section 3(a)(ii) of Executive Order 13846, which authorizes the Secretary of State, in consultation with other agencies, to impose sanctions upon anyone who, "on or after November 5, 2018, knowingly engaged in a significant transaction for the purchase, acquisition, sale, transport, or marketing of petroleum or petroleum products from Iran." The State Department has explained that the designations are based on a belief that the Company participated in such transactions by brokering the charter for the M/T Lady Maris and M/T Star Sino (f/k/a M/T Falcon Victory), but Plaintiffs have confirmed they have not conducted business with either ship and certainly have not "knowingly" done so. None of the Defendants have presented any evidence to the contrary or even produced the administrative record upon which the designations were based.

29. Although Defendants commonly reach out to non-U.S. entities suspected of engaging in transactions with sanctions targets to request that the activity cease or that they risk being designated, that did not occur here. Defendants never provided Plaintiffs with any advance notice that they were being considered for designation as SDNs prior to their designation and, even now, Plaintiffs have not been provided with any evidence to support their designation or given an opportunity to refute it. That lack of an opportunity to be heard violates Plaintiffs' due process rights and undermines Defendants' own policies. Had Defendants merely reached out to Plaintiffs for assistance, rather than impose its most Draconian sanctions first, any possible violation of Iran sanctions could have been avoided and anyone involved in the violation apprehended, such that Plaintiffs would be eligible for a financial reward under the State Department's Rewards for Justice Program ("RFJ Program"), created under the 1984 Act to Combat International Terrorism. Such informal reach-outs are an intermediary step, often employed by Defendants, that achieve foreign policy objectives without imposing the "civil death" on an entity that results from SDN designation. The State Department's own website states as follows:

> The Office of Economic Sanctions Policy and Implementation (TFS/SPI) maintains and enforces sanctions to maximize their economic impact on our targets and minimize the damage to U.S. economic interests. We also work to remove economic sanctions when appropriate to reward and incentivize improved behavior or demonstrate U.S. support for newly established democratic governments. In addition, SPI conducts outreach on sanctions issues to a wide range of interested parties including NGOs, companies, diaspora groups, and others.

*See* https://www.state.gov/economic-sanctions-policy-and-implementation/.

30. The State Department also has the option to take the additional step of utilizing the RFJ Program where the Department reaches out to an entity (or accepts information provided by an entity), requests cooperation, and receives information that is useful in addressing foreign

policy objectives relating to terrorist financing.  Such rewards under the RFJ Program are used with some regularity in the Iranian Revolutionary Guard Corps sanctions context – although not all such actions are public.  According to the State Department's website, the RFJ program has paid out over $150 million to over 100 people who have provided information.  Again, while Strait Shipbrokers is not seeking a reward for information, it has repeatedly requested and been denied a call or video conference with the State Department to review any substantive information the Department may have or on which the Department may seek clarification.

31.     Upon information and belief, the State Department designated the Plaintiffs with little to no basis.  Neither Strait Shipbrokers nor Mr. Basrai knowingly engaged in any transaction involving Iranian origin petroleum products, nor are Plaintiffs aware of having engaged in any such transaction.

## THE DELISTING PETITION

32.     On December 7, 2020, consistent with OFAC's sanctions regulations at 31 CFR Part 500, Plaintiffs first requested that OFAC delist Plaintiffs from the SDN list.  In its request, Plaintiffs also sought a general license to continue its operations and maintain the livelihoods of Mr. Basrai, his family, and all employees of Strait Shipbrokers.  This request for delisting was thereafter transferred to the State Department; the license application remains pending with OFAC which is the agency responsible for administering the sanctions program.

33.     After it was made clear that the SDN designations were made by the State Department, Plaintiffs' representatives spoke with State Department officials on December 29, 2020, following which the Department sent two questionnaires to Plaintiffs seeking additional information.  Plaintiffs promptly responded to those requests.

34.     Since then, the status of the original delisting and general license requests have

been frequently communicated by e-mail correspondence.

35. Despite Plaintiffs' full cooperation with the State Department, the Department has unnecessarily, arbitrarily, and capriciously failed to respond to Plaintiffs' desperate pleas for relief, either by ruling on the delisting petition or by producing the administrative record upon which the designations were based. Likewise, more than seven months has passed since Plaintiffs made their request for OFAC to grant them a license that would allow U.S. persons to engage in business with them while the delisting petition is considered. Defendants have thereby ignored the real-world impact of its SDN designations, that international companies involved in the shipping industry will not deal with any company or individual designated as an SDN.

### *The Impact of the Designation*

35. On or about November 2, 2020, the Company's Citibank account in Singapore was frozen, depriving it of its operating funds. The ability of its U.S.-based customers to do business with the Company was terminated immediately by the designation. Because global financial institutions comply with U.S. sanctions, other customers including Indian customers also ceased doing business with the Company as a matter of practice.

36. As a result of the SDN designation, and the inability to obtain a general or specific license from OFAC, the Company is in a dire financial situation. In addition, given the seven-month delay in responding, Strait Shipbrokers has lost 33 personnel who lost hope that the business will remain viable. The Company is down to approximately six employees. Strait's principal is also facing loss of his visa allowing him to work and live in Singapore, requiring him and his family to return to India – where he has not lived in over 20 years.

37. OFAC's public designation has rendered Plaintiffs pariahs. Because the international financial sector treats every SDN equally, the implications for both have been

devastating. The Company has lost 33 employees, about 30 fixtures a month, and roughly 240 fixtures in last eight months. Moreover, this has set the Company back 15 years due to loss of client network, reputation, and loss of company employees. Even after the anticipated State Department delisting, the Company will have to invest time, resources, and energy to rebuild client trust and to rebuild its employee base.

38. To date, the Company has suffered innumerable reputational and pecuniary losses, with further losses accruing daily. Plaintiffs remain unable to engage in commerce due to the wrongful designation of the Plaintiffs as SDNs.

39. If Plaintiffs are not delisted promptly and without further delay, the Company will cease to exist, resulting in jobs loss for its remaining personnel – and impact the livelihood of their respective families. The harm suffered by Plaintiffs is accordingly irreparable.

**Count I:     Plaintiffs' Designation as SDNs Violated the Administrative Procedures Act**

40. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 to 39 herein.

41. The State and Treasury Departments are agencies subject to the requirements of the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 701(b)(1).

42. Defendants' designation of Plaintiffs as SDNs constitutes final agency action that is reviewable by this Court.

43. The APA requires a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706(2)(A).

44. Under the arbitrary and capricious standard, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between

the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  An agency action is arbitrary and capricious "if the agency…entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.*

45. Plaintiffs' designation as SDNs by the State Department plainly are arbitrary and capricious.  Even now, Defendants have failed to articulate any explanation as to the basis for those designations.  The most the Defendants have offered is a claim that the designation relied upon Plaintiffs' having done business with the M/T Lady Maris and M/T Star Sino (f/k/a M/T Falcon Victory), but Plaintiffs have confirmed they did no business with either ship, certainly not "knowingly," which would be required for a designation.  Defendants have not identified any evidence to the contrary.

**Count II:   Plaintiffs' Designation as SDNs Violated the Due Process Clause of the Fifth Amendment**

46. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 to 45 herein.

47. The Fifth Amendment Due Process Clause of the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law…" U.S. Const. Amend. V.  This clause clearly indicates that parties deprived of their property must receive adequate notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

48. Although Strait Shipbrokers is a foreign company and Mr. Basrai is a foreign citizen, both conduct substantial business in the United States with numerous U.S.-based clients.

These substantial connections with the United States, including Mr. Basrai physically entering the United States to meet with U.S.-based clients and conducting business while present in the United States, entitles Plaintiffs to the protections of the Due Process Clause in their own right. *See Al-Aqeel v. Paulson*, 568 F. Supp. 2d 64, 70 (D.D.C. 2008) (Kessler, J.). The Company regularly does business with U.S. companies and, on behalf of the Company, Mr. Basrai regularly visits the United States to do business. Additionally, as the vendor of services to U.S. persons, Plaintiffs have standing based on "the vendor-vendee relationship alone." *Nat'l Cottonseed Prods, Ass'n v. Brock*, 825 F.2d 482, 492 (D.C. Cir. 1987) (R. Ginsburg, J.). Affording third-party standing here is particularly warranted because, although U.S. persons are harmed by being denied the ability to do business with a blocked entity, only the blocked entity itself can challenge the designation. 31 C.F.R. § 501.807 (delisting regulations); *see also Kowalski v. Tesler*, 543 U.S. 125, 130 (2004) (recognizing third-party standing where the relationship with the third-party is close and the third-party is hindered in protecting its own rights). Thus, the injury to U.S. persons will otherwise go unredressed.

49. Plaintiffs' designation as SDNs has deprived them of their liberty interest in conducting business, deprived them of their property interest in the frozen Citibank account, and damaged their protected interest in their reputations. Likewise, it has injured the liberty interests of U.S. persons by depriving them of their right to do business with Plaintiffs.

50. Plaintiffs' designation as SDNs was made without advance notice and an opportunity to be heard and, subsequent to the designation, more than seven-months since the delisting petition was filed, Defendants still have not provided Plaintiffs with a meaningful explanation for why they have been designated or an opportunity to refute the basis for the designations. Plaintiffs have repeatedly attested to not having violated the sanctions on Iran,

certainly not "knowingly," and yet Defendants have neither granted Plaintiffs' delisting petition nor granted them interim relief.  Accordingly, Plaintiffs have been denied due process of law. Plaintiffs have repeatedly requested a conference call or video call with the State Department and have repeatedly been denied such requests.

### Count III: Request for a Preliminary Injunction

51. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 to 50 herein.

52. The Court should issue a preliminary injunction requiring OFAC to issue a general license permitting U.S. persons to do business with Plaintiffs while their delisting petition is pending.  OFAC has issued such general licenses in the past, including for PdVSA and UC Rusal, far larger entities that had the wherewithal to survive a long delisting process, something the much smaller Plaintiffs here do not.

53. In the absence of a preliminary injunction, the Plaintiffs will continue to suffer irreparable harm, including being driven out of business and the loss of livelihood of Mr. Basrai, his family, and the Company's employees.

54. The balance of equities favors the granting of a preliminary injunction lifting the designation, because while the harm to the Plaintiffs of not granting such relief would be catastrophic, the grant of such relief would have no adverse impact on Defendants.  The State Department would retain the ability to re-impose sanctions immediately if a valid legal basis to do so should arise.

55. The public interest would be best served by the grant of preliminary relief, because such relief would provide Plaintiffs due process as required under the Constitution.

### Count IV:     Request for Writ of Mandamus

56. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 to 55 herein.

57. The State Department and OFAC, and the Secretaries of State and the Treasury, have a duty to act at all times within the bounds of the Constitution and APA.

58. Plaintiffs' designation as SDNs violated the APA and Constitution, as set forth above.

59. Defendants have a duty to correct errors in judgment and violations of due process and the APA.

60. Accordingly, the Court should order Defendants to delist Plaintiffs from the SDN list without further delay.

### Prayer for Relief

WHEREFORE, Plaintiffs Strait Shipbrokers Pte. Ltd. and Mr. Basrai pray as follows:

1. That this Court issue a preliminary injunction requiring OFAC to issue a general license permitting U.S. persons to do business with Plaintiffs until the delisting process and this case have been decided on the merits;

2. That this Court issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Plaintiffs' designation as SDNs is unlawful and unconstitutional;

3. That this Court issue a writ of mandamus compelling Defendants to delist Plaintiffs from the SDN list;

4. That this Court grant Plaintiffs such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated:  July 19, 2021

                      Respectfully submitted,

By: /s/ Christopher D. Man.
     Christopher D. Man (Bar No. 453553)
     Cari N. Stinebower (Bar No. 457147)
     WINSTON & STRAWN LLP
     1901 L Street, N.W.
     Washington, D.C.  20036
     (202) 282-5000 (phone)
     (202) 282-5100 (fax)
     CMan@winston.com
     CStinebower@winston.com

*Counsel for Plaintiffs Strait Shipbrokers Pte. Ltd. and Murtuza Mustafa Munir Basrai*