# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STRAIT SHIPBROKERS PTE. LTD. | ) |
| | ) |
| 1 North Bridge Road | ) |
| #22-06 High Street Centre | ) |
| Singapore 179094 | ) |
| | ) |
| MURTUZA MUSTAFA MUNIR BASRAI | ) Civil Action No. 1:21-cv-1946-BAH |
| | ) |
| 1 North Bridge Road | ) |
| #22-06 High Street Centre | ) **MEMORANDUM IN SUPPORT** |
| Singapore 179094 | ) **OF PLAINTIFFS' MOTION FOR** |
| | ) **PRELIMINARY INJUNCTION** |
| *Plaintiffs*, | ) **AND EXPEDITED DISCOVERY** |
| | ) |
| v. | ) |
| | ) |
| ANTONY BLINKEN, in his official capacity as | ) |
| the Secretary of State, | ) |
| | ) |
| 2201 C Street, N.W. | ) |
| Washington, D.C. 20520 | ) |
| | ) |
| U.S. DEPARTMENT OF STATE | ) |
| | ) |
| 2201 C Street, N.W. | ) |
| Washington, D.C. 20520 | ) |
| | ) |
| JANET YELLEN, in her official capacity as | ) |
| Secretary of the Treasury, | ) |
| | ) |
| 1500 Pennsylvania Avenue, N.W. | ) |
| Washington, D.C. 20220 | ) |
| | ) |
| U.S. DEPARTMENT OF THE TREASURY | ) |
| | ) |
| 1500 Pennsylvania Avenue, N.W. | ) |
| Washington, D.C. 20220 | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

    A.    Plaintiffs are Shipbrokers with Extensive Ties to the United States ...................... 2

    B.    The State Department Designated Plaintiffs as Specially Designated
           Nationals Without Notice, Explanation, or an Opportunity to be Heard ............... 3

    C.    The State Department's Designation of Plaintiffs as a Specially
           Designated Nationals Is Causing and Will Continue to Cause Plaintiffs
           Irreparable Harm ................................................................................................... 6

    D.    Plaintiffs Filed Suit and Now Seek a Preliminary Injunction ............................... 8

ARGUMENT ........................................................................................................................ 9

    A.    Plaintiffs Are Likely to Succeed on the Merits of Their Claim that the
           Designations Are Unlawful and Unconstitutional. ............................................... 9

          1.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims that
               the Designation Was Arbitrary, Capricious, and Contrary to Law in
               Violation of the APA ................................................................................. 10

          2.    The SDN Designation Violates Due Process Because the
               Government Did Not Provide Any Notice or Opportunity to
               Contest the Designation ............................................................................. 12

    B.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary
           Relief ................................................................................................................... 14

    C.    The Balance of Equities and the Public Interest Weigh in Plaintiffs Favors ........ 15

    D.    The Court Should Order Expedited Discovery of the Administrative
           Record ................................................................................................................. 16

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Aamer v. Obama,*
  742 F.3d 1023 (D.C. Cir. 2014) ...................................................................................8

*Advance Am. v. FDIC,*
  2017 WL 2672741 (D.D.C. Feb. 23, 2017) ...............................................................13

*Armstrong v. Manzo,*
  380 U.S. 545 (1965) ...................................................................................................11

*County of Los Angeles v. Shalala,*
  192 F.3d 1005 (D.C. Cir. 1999) .................................................................................10

*Dickinson v. Zurko,*
  527 U.S. 150 (1999) ...................................................................................................10

*Elrod v. Burns,*
  427 U.S. 347 (1976) ...................................................................................................13

*Feinerman v. Bernardi,*
  558 F. Supp. 2d 36 (D.D.C. 2008) .............................................................................14

*Garnett v. Zeilinger,*
  2017 WL 8944640 (D.D.C. Dec. 15, 2017) ..........................................................15, 16

*Goings v. Court Servs. & Offender Supervision Agency for D.C.,*
  786 F. Supp. 2d 48 (D.D.C. 2011) .............................................................................13

*Gordon v. Holder,*
  721 F.3d 638 (D.C. Cir. 2013) ...................................................................................15

*Greatness v. FEC,*
  831 F.3d 500 (D.C. Cir. 2016) ...................................................................................14

*Islamic Am. Relief Agency v. Gonzales,*
  477 F.3d 728 (D.C. Cir. 2007) .....................................................................................9

*League of Women Voters v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ....................................................................................9, 15

*Luokung Tech. Corp. v. Dep't of Defense,*
  2021 WL 1820265 (D.D.C. May 5, 2021) ....................................................................9

*Marsh v. Or. Nat. Res. Council*,
    90 U.S. 360 (1989)................................................................................................9

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)............................................................................................11

*Mills v. District of Columbia*,
    571 F.3d 1304 (D.C. Cir. 2009)........................................................................13

*Morgan Stanley DW Inc. v. Rothe*,
    150 F. Supp. 2d 67 (D.D.C. 2001)....................................................................14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..........................................................................................9, 10

*Mylan Pharm., Inc. v. Shalala*,
    81 F. Supp. 2d 30 (D.D.C. 2000).......................................................................13

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001)...........................................................................11

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................................14

*Pursuing Am.'s Greatness v. FEC*,
    831 F.3d 500, 505 (D.C. Cir. 2016) ....................................................................9

*Physicians for Social Responsibility v. Wheeler*,
    956 F.3d 634 (D.C. Cir. 2020)...........................................................................10

*Ralls Corp. v. Ralls Corp. v. Comm. on Foreign Inv.*,
    758 F.3d 320 (D.C. Cir. 2014)...........................................................................12

*SEC v. Chenery*,
    318 U.S. 80 (1943)..............................................................................................10

*Simms v. District of Columbia*,
    872 F. Supp. 2d 90 (D.D.C. 2012).....................................................................13

*TikTok Inc. v. Trump*,
    507 F. Supp. 3d 92 (D.D.C. 2020)..................................................................9, 13

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990)............................................................................................11

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007)...........................................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)....................................................................................................8

*Xiaomi Corp. v. Dep't of Defense*,
  2021WL 950144 (D.D.C. Mar. 12, 2021)................................................................9

**Statutes**

5 U.S.C. § 706.....................................................................................................1, 12

5 U.S.C. § 706(2)(A)................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 26(d) ...............................................................................................16

U.S. Const., amend. V.......................................................................................*passim*

Van Schaack, *A Test for the US Posture on the Int' Criminal Court: "Safe
  Harbor" Licenses?* Just Security (Sept. 4, 2020) ....................................................5

## INTRODUCTION

Plaintiffs Strait Shipbrokers Pte. Ltd. ("Strait Shipbrokers" or "the Company") and its Managing Director, Murtuza Mustafa Munir Basrai ("Mr. Basrai" and collectively, "Plaintiffs") brought this action challenging the Trump Administration's unlawful designation of both Plaintiffs as "Specially Designated National" ("SDN") on or around October 29, 2020 by the United States Department of State ("State Department") and by then-Secretary of State, Michael Pompeo, predecessor to the current Secretary of the State and named defendant, Antony Blinken.  That designation by the State Department prohibits U.S. persons from engaging in any transactions with the sanctioned parties and, by operation of law, blocks or "freezes" any property interests in property of the sanctioned parties within the possession or control of U.S. persons.  As a result, the Company's Citibank account in Singapore is frozen, effective on or around October 29, 2020, and the designation as SDNs has harmed Plaintiffs' ability to engage in business with U.S. persons, and damaged their reputations around the world and their ability to engage in business generally. Plaintiffs now seek a preliminary injunction requiring Treasury's Office of Foreign Asset Control ("OFAC") to issue a general license permitting U.S. persons to do business with Plaintiffs while their delisting petition is pending and to preliminarily and permanently enjoin Defendants from implementing or enforcing Plaintiffs' designations as SDNs.

The State Department designation and the application of the restrictions violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  The designation is arbitrary, capricious, and contrary to law, in violation of the APA, because it is wholly unexplained, unsupported by evidence—let alone "substantial evidence"—and necessarily runs counter to any accurate information before the agency.  *See infra* pp. 8-11.  Plaintiffs were denied due process by the SDN designation and consequent application of the restrictions to the Company without prior notice of the basis for the

designation, any opportunity to be heard and challenge the designation before the agency, or access to the evidence on which the agency relied.  *See infra* pp. 11-13.  Accordingly, Plaintiffs are likely to succeed on the merits of their claims.

Plaintiffs also satisfy the other requirements for injunctive relief: they will suffer irreparable harm if the SDN designation and restrictions are not preliminarily enjoined while their delisting petition is pending, and the balance of equities and public interest favors enjoining application of Defendants' unlawful and unconstitutional actions until Plaintiffs' challenges can be adjudicated, particularly because Defendants will suffer no harm from the temporary delay of the implementation and enforcement of the SDN designation as applied to Plaintiffs.

## STATEMENT OF FACTS

### A.  Plaintiffs Are Shipbrokers with Extensive Ties to the United States

Strait Shipbrokers is in the marine bulk liquid transport industry offering varied services in shipbrokering of bulk petrochemicals, Veg oil, LPG, LNG, clean petroleum, and crude oil.  *See* Exhibit 1, Declaration of Murtuza Mustafa Munir Basrai ("Basrai Decl.") ¶ 3.  As a shipbroker in the maritime industry, it acts as an intermediary between ship owners and charter parties, as well as negotiating freight and demurrage.  Basrai Decl. ¶ 4.  Shipbrokers—and more specifically Plaintiffs—do not arrange port calls, bunkering, and ship-related insurance.  *Id.*  They also do not arrange for cargo-related insurance.  *Id.*  Those tasks remain with the ship owners and the cargo charter parties, respectively.  Plaintiffs also do not accept third party payments (either as remitter or beneficiary).  *Id.*

Plaintiffs do not require, nor need, cargo country of origin information to successfully act in their role as a broker.  Basrai Decl. ¶ 5.  The contracts between ship owners and charter parties are negotiated among themselves, and not the brokers.  *Id.*  Accordingly, it is not uncommon for brokers to lack visibility into the terms of those contracts, and the ability to demand information

or documents concerning those contracts is beyond the control of the Company.  *Id.*  Generally, a broker does not inquire about the cargo country of origin during negotiations.  *Id.*  A ship owner and charter party likely would either decline to respond to such a query or seek another broker, as industry practice is to not collect information at this level of detail.  Sometimes a broker may learn these details after a voyage is complete.  In some limited instances, a ship owner may request that the broker assist in any disputes between the owner and the charter parties, which may, but not always, lead to visibility of cargo origin and/or bills of lading that are maintained by the charter party.  That was not the case with either vessel at issue here.

In addition, the specific port details are not required by brokers where ports are relatively close together.  Basrai Decl. ¶ 6.  In these instances, what is relevant for purposes of determining demurrage is the geographic range of ports (e.g., Middle East Ports, Caribbean Ports, etc.).  *Id.* Theoretically, "Middle East Ports" could include an Iranian port, but it could also include countless other ports in the region.  *Id.*  The point for the port reference—either specifically or by range—is to allow the broker to price demurrage costs.  *Id.*

Because of the limited and rare visibility into the details of underlying charter transactions, including with respect to cargo origin and port destinations, there is no basis for any suggestion that Plaintiffs engaged in a transaction for the purchase, acquisition, sale, transport, or marketing of petroleum products from Iran.  Plaintiffs did not knowingly engage in any transaction involving Iranian origin petroleum products, nor are Plaintiffs aware of having engaged in any such transaction.

### B. The State Department Designated Plaintiffs as Specially Designated Nationals Without Notice, Explanation, or an Opportunity to be Heard

On August 6, 2018, President Trump signed Executive Order 13846 "Reimposing Certain Sanctions With Respect to Iran" (the "Executive Order").  Section 5(a) of the Executive Order

pertains to "Menu-based" sanctions as designated by the State Department.  Plaintiffs learned for

the first time of their designation as SDNs from OFAC's October 29, 2020 press release, which

did not indicate why the Company and Mr. Basrai were designated.  *See* Compl., Exhibit 1.

OFAC's press release announcing that Plaintiffs were designated as SDNs was widely covered in

the press.  *See* Compl., Exhibit 2.

On December 7, 2020, Plaintiffs sought emergency relief from OFAC through a petition

for delisting and a request for a general license that would allow U.S. persons to engage in business

with Plaintiffs throughout the delisting process.  In doing so, Plaintiffs also sought a copy of the

administrative record for the designation of both Plaintiffs.

The State Department published the designation in the Federal Register on January 6, 2021

with no meaningful explanation, only stating: "The Secretary of State has determined, pursuant to

Section 3(a)(ii) of E.O. 13846, . . . Strait Shipbrokers PTE. LTD, ha[s] knowingly, on or after

November 5, 2018, engaged in a significant transaction for the purchase, acquisition, sale,

transport, or marketing of petroleum products from Iran" and accordingly imposed sanctions on

the Company.  Similarly, the Federal Register stated "[p]ursuant to Sections 4(e) and 5(a) of E.O

13846, the Secretary of State has selected the following sanctions to be imposed upon… Murtuza

Mustagamunir Basrai" based on his role in the Company.  The Federal Register notice did not

identify the "significant transaction" at issue. [1]

On January 29, 2021, the State Department provided a partial explanation for the

designations through a questionnaire that provided: "we are able to provide additional detail about

the factual basis for the Department of State's designation of Strait Shipbrokers pursuant to section

---

[1] Paragraph 2 of the Complaint mistakenly alleged that the designation was not published.  To be clear, Plaintiffs' concern is that they did not receive advance notice of the designation and they never have been provided with the factual basis for their designations.

3(a)(ii) of Executive Order 13846.  Strait Shipbrokers brokered the hiring of the M/T Lady Maris from early October 2019 to early November 2019.  In that time, the M/T Lady Maris shipped Iranian petroleum products to China.  Please describe in detail Strait Shipbrokers' role, if any, in this transaction."  This was the first confirmation to Plaintiffs that their designations had been made by the State Department and were related to the M/T Lady Maris.

On February 16, 2021, Plaintiffs responded to the questionnaire explaining that they had not brokered the sale of the M/T Lady Maris, identified who they understood from a public records search to be the ship's owners, and explained they had "not conducted business with any of these persons or entities either."

On March 17, 2021, the State Department sent Plaintiffs a second questionnaire.  The State Department clarified that "Strait Shipbrokers was designated for its role in the chartering of the M/T Lady Maris from early October 2019 to early November 2019," not its sale, and asked for information about the Company's role in this regard.  In addition, the State Department suggested a new basis for the designation, explaining: "[w]e have additional information suggesting that Strait Shipbrokers played a role in voyages that involved Iranian petroleum products.  Strait Shipbrokers facilitated the voyage of the M/T Star Sino (IMO: 9174610; previously named M/T Falcon Victory) for loading of petroleum products in Iran in October 2019," and asked questions about the Company's role.

On April 2, 2021, Plaintiffs again confirmed to the State Department that "the Company has not conducted business relating to the M/T Lady Maris."  Plaintiffs also advised the State Department that the Company did not broker the sale of use of M/T Star Sino or M/T Falcon Victory.

To date, Plaintiffs have not been provided any factual basis for their designation and have not been afforded an opportunity to rebut those factual allegations.

**C.  The State Department's Designation of Plaintiffs as Specially Designated Nationals Is Causing and Will Continue to Cause Plaintiffs Irreparable Harm**

As a result of the SDN designation, and the inability to obtain a general or specific license from OFAC, the Company is in a dire financial situation and has had to terminate the employment of 33 personnel.  *See* Basrai Decl. ¶ 19; Exhibit 2, Declaration of Ooi Yen Yong (Daphne) ("Daphne Decl.") ¶ 6.  The SDN designation is informally referred to as a "civil death" because of the restrictions placed upon a designee.[2]  The State Department's own website states the point of the sanctions is to "maximize their economic impact":

> The Office of Economic Sanctions Policy and Implementation (TFS/SPI) maintains and enforces sanctions to maximize their economic impact on our targets and minimize the damage to U.S. economic interests.  We also work to remove economic sanctions when appropriate to reward and incentivize improved behavior or demonstrate U.S. support for newly established democratic governments.  In addition, SPI conducts outreach on sanctions issues to a wide range of interested parties including NGOs, companies, diaspora groups, and others.

*See*  https://www.state.gov/economic-sanctions-policy-and-implementation/.    Thus,  Defendants are well aware of the crippling injury they are imposing on Plaintiffs, as imposing such injury is the very purpose of their designation of Plaintiffs.  Defendants are so aware of the crippling potential that, as part of their outreach, they are well known to reach out to non-U.S. entities engaged in transactions with sanctions targets to request that the activity cease—or risk being designated.  For example, Defendants are well known to have met with European businesses to encourage voluntary compliance with U.S. sanctions on Iran.  In the maritime space, the State

---

[2] *See, e.g.*, Beth Van Schaack, *A Test for the US Posture on the Int' Criminal Court: "Safe Harbor" Licenses?* Just Security (September 4, 2020), available at https://www.justsecurity.org/72305/a-test-for-the-us-posture-on-the-intl-criminal-court-safe-harbor-licenses/ ("[I]t should come as no surprise that targets of U.S. sanctions have described their predicament as being subject to 'civil death.'").

Department also has been known to reach out to Flag registries where a vessel flying a particular flag has been identified as carrying Iranian cargo—even where there is no apparent U.S. nexus. Moreover, in recognition of the serious harm a designation has on an individual or Company, the State Department has a process by which parties can obtain a general license while a delisting petition is pending. The general license allows the individual or Company to continue its operations while their petition is pending. OFAC often grants such requests.[3]

We submit that if the State Department's objective was to discourage Plaintiffs from apparent Iran-related business, had the State Department provided prior notice, and had Plaintiffs been able to identify the suspect cargo, Plaintiffs would have cooperated with the Defendants' requests. As indicia of Plaintiffs' on-going intent to cooperate with Defendants, Plaintiffs have, since the designations, repeatedly requested (and been denied) the opportunity to meet (via video conference or telephonically) with Defendants.

Further indicia of Defendants' multiple foreign policy tools—most far less draconian than listing the Plaintiffs on the SDN List—is the Rewards for Justice Program (the "RFJ" Program). Under the RFJ Program, the State Department's website states in relevant part:

---

[3] *See, e.g.*, GAZ Group (License Number GL5J), available at https://home.treasury.gov/system/files/126/ukraine_gl15j.pdf; Rusal (License Number GL14A-3), available at https://home.treasury.gov/system/files/126/ukraine_gl14e.pdf; EN+ Group PLC (License Number GL16-A-E), available at https://home.treasury.gov/system/files/126/ukraine_gl16e.pdf; CITGO Holding Inc. (License Number GL7c), available at https://home.treasury.gov/system/files/126/venezuela_gl7c.pdf; PdVSA (License Number GL8H), available at https://home.treasury.gov/system/files/126/venezuela_gl8h_0.pdf; Drogas La Rebaja/Copservir/Farmacoop (Favorable Licensing Policy), available at https://www.treasury.gov/press-center/press-releases/Pages/js2102.aspx.

> The U.S. Department of State's Rewards for Justice (RFJ) is offering a reward of up to $15 million for information leading to the disruption of the financial mechanisms of Iran's Islamic Revolutionary Guard Corps (IRGC) and its branches, including the IRGC-Qods Force (IRGC-QF). This includes seeking information on the IRGC's illicit oil sales, including via oil tankers like the Adrian Darya.

*See* https://www.state.gov/rewards-for-justice-reward-offer-for-information-on-the-financial-mechanisms-of-irans-islamic-revolutionary-guard-corps-and-its-branches-including-the-irgc-qods-force-2/. Again, Plaintiffs respectfully submit that Defendants could have provided prior notice either through its voluntary outreach program or through the RFJ Program if Defendants did have evidence that the Plaintiffs were somehow processing transactions involving illicit Iranian oil sales. Such notice would have achieved the foreign policy objective of hampering Iran's trade while saving the Plaintiffs from their "civil death."

As a result of the designations, and as Defendants intended, Plaintiffs' reputation and livelihoods were immediately and irreparably harmed. *See* Basrai Decl. ¶ 21. The Company's ability to remain viable and to pay Mr. Basrai and its employees is threatened by the designation. *See* Daphne Decl. ¶ 6. In addition, given the seven-month delay in responding, Strait Shipbrokers has lost additional personnel who have lost hope that the business will remain viable. *See* Basrai Decl. ¶ 19. The Company is down to approximately six employees. *Id.* Strait's principal is also facing loss of his visa allowing him to work and live in Singapore, requiring him and his family to return to India—where he has not lived in over 20 years. *See* Basrai Decl. ¶ 20.

If Plaintiffs are not delisted promptly and without further delay, the Company will cease to exist. *See* Daphne Decl. ¶ 6. The harm suffered by Plaintiffs is accordingly irreparable.

**D.  Plaintiffs Filed Suit and Now Seek a Preliminary Injunction**

Plaintiffs filed this action on July 19, 2021. Plaintiffs' Complaint names as Defendants the State Department, which was the agency responsible for designating Plaintiffs as SDNs; Secretary of State Anthony Blinken, who is sued in his official capacity as the Secretary of State; the United

States Department of the Treasury ("Treasury"), with whom the State Department was required to consult before designating Plaintiffs as SDNs and which manages the SDN list; and Secretary of the Treasury Janet L. Yellen, who is sued in her official capacity as the senior official of the Treasury.

Plaintiffs assert four claims, alleging that Defendants' actions violate the APA and the Fifth Amendment.  In particular, Plaintiffs allege that Defendants' actions violate the APA because they are arbitrary and capricious, run counter to any accurate information that was before Defendants, and did not comply with the requirements for the exercise of their authority.  Plaintiffs also allege that Defendants' actions violate the Due Process Clause of the Fifth Amendment because Plaintiffs received no notice or explanation of the SDN designation and have not received an opportunity to respond and be heard.

Defendants have not yet disclosed any administrative record in connection with Plaintiffs' SDN designation.  Upon filing the Complaint, Plaintiffs provided notice to the Department of Justice of the Complaint and the imminent filing of a motion for a preliminary injunction.

## ARGUMENT

To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016).  These elements are readily satisfied here.

**A. Plaintiffs Are Likely to Succeed on the Merits of Their Claim that the Designations Are Unlawful and Unconstitutional.**

"[T]he first and most important factor" in the *Winter* analysis—"whether [Plaintiffs] have

established a likelihood of success on the merits"—weighs heavily in Plaintiffs' favor.  *See Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  Plaintiffs are highly likely to succeed on the merits of their claims that the State Department's unsupported and baseless SDN designation was not the product of the reasoned agency decision-making required by the APA and failed to abide by the constitutional due process requirements.

    1.  *Plaintiffs Are Likely to Succeed on the Merits of Their Claims that the Designation Was Arbitrary, Capricious, and Contrary to Law in Violation of the APA.*

The APA requires a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *See* 5 U.S.C. § 706(2)(A).  The APA also empowers the courts to set aside a "final agency action for which there is no other adequate remedy in a court."  *Id.*  The SDN designation is the sort of agency action that this Court has already found to be reviewable.  *See, e.g.*, *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 110 (D.D.C. 2020) ("[T]he decision-making process an agency employs to effectuate an executive order issued under IEEPA is subject to arbitrary and capricious review."); *see also Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007).  In fact, this Court recently invalidated SDN designations in two separate cases.  *Luokung Tech. Corp. v. Dep't of Defense*, 2021 WL 1820265 (D.D.C. May 5, 2021) (Contreras, J.); *Xiaomi Corp. v. Dep't of Defense*, 2021 WL 950144 (D.D.C. Mar. 12, 2021) (Contreras, J.).

In evaluating agency actions under the "arbitrary and capricious" standard, courts "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Or. Nat. Res. Council*, 90 U.S. 360, 378 (1989) (quotations omitted).  An agency acts arbitrarily, capriciously, and contrary to law, in violation of the APA, when it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its

decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise*.*"*  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).  When review of an agency's action is "bound up with a record-based factual conclusion," the reviewing court must determine whether that conclusion "is supported by substantial evidence."  *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999) (quotations omitted).

Plaintiffs are likely to succeed on the merits of their APA claim because the SDN designation is unexplained.  The October 29, 2020 press release issued by OFAC merely stated the designations were pursuant to Executive Order 13846, but provided no basis for why those designations were made.  *See* Compl., Exhibit 1.  An agency is required to *explain* its action. *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 644 (D.C. Cir. 2020) ("It is axiomatic that the APA requires an agency to explain its basis for a decision."); *SEC v. Chenery*, 318 U.S. 80, 94 (1943) ("[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review.").  When an agency has not "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43 (internal quotation marks omitted), courts routinely conclude that the agency's action is arbitrary and capricious.  *See, e.g.*, *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (where "the agency has failed to provide a reasoned explanation . . . [the court] must undo its action").

Although Defendants have not yet produced an administrative record, the SDN designation is also not supported by "substantial evidence" because it runs counter to the accurate information before the State Department.  As explained above, Plaintiffs act as intermediaries between ship owners and charter parties and have limited visibility into the underlying charter transactions,

including the cargo origin and port destination.  *See* Basrai Decl. ¶ 4.  There is no basis for any suggestion that Plaintiffs engaged in a transaction for the purchase, acquisition, sale, transport, or marketing of petroleum products from Iran.  After designating the Plaintiffs as SDNs, the State Department inquired about two ships and Plaintiffs confirmed they have not conducted business with either ship and certainly have not "knowingly" done so.

By failing to provide a reasoned explanation for the designations, and by making designation decisions that necessarily run counter to any accurate evidence before the agency, the State Department engaged in arbitrary and capricious decision making, in violation of the APA, 5 U.S.C. § 706.

2.   *The SDN Designation Violates Due Process Because the Government Did Not Provide Any Notice or Opportunity to Contest the Designation*

Plaintiffs are also likely to prevail on their due process claim.   "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  The Supreme Court of the United States "consistently has held that some form of hearing is required before an individual is finally deprived" of a property or liberty interest.  *Id*. Plaintiffs received nothing of the sort—no notice, no access to unclassified evidence, and no opportunity to be heard. Such complete lack of process is clearly insufficient under the Fifth Amendment.

Moreover, Plaintiffs, through counsel, repeatedly have offered to be interviewed by the State Department to provide information with respect to Strait Shipbroker's business and to efficiently address any questions the State Department may have with respect to Strait Shipbroker's business activities.  The State Department has declined every such request for a conference or video call, relying instead on the questionnaire process.

The Due Process Clause also applies to foreign corporations such as Strait Shipbrokers when they have "entered the territory of the United States and established substantial connections with this country." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 203 (D.C. Cir. 2001); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). The Company satisfies both requirements. It maintains substantial ongoing business connections with U.S. companies, including Ardmore Tankers, Exxon Mobil, Fairfield Carriers, ICC Chemical Corporation, Penfield Marine, Stolt Tankers, Tricon Energy, and Vinmar International. *See* Basrai Decl. ¶ 7. Moreover, Mr. Basrai enters the U.S. to meet with his clients and conducts business while in the United States. *See* Basrai Decl. ¶ 7. He has spent more than 150 days in the United States over the past 10 years. *Id.* The U.S. connections are sufficient to trigger due process protections.

The process by which the State Department designated Plaintiffs as SDNs failed to satisfy the minimum requirements of due process. Defendants gave no notice to Plaintiffs. Instead, Plaintiffs found out along with the general public that they had been designated. *See* Basrai Decl. ¶ 8. Since then, Plaintiffs have received almost no information from the Government regarding any factual basis for the SDN designation nor any opportunity to address any Government concerns or to "rebut the factual premises underlying the [agency's] action." *Ralls Corp.*, 758 F.3d at 320.

Plaintiffs have repeatedly requested a video or teleconference call with the State Department to understand the State Department's basis for the designations and to address any questions or concerns the State Department may have. Every request has been denied. As explained above, Plaintiffs have not received any factual basis for their SDN designations nor the materials on which those designations were purportedly based.

**B. Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Plaintiffs have shown that the SDN designations violated their procedural due process rights. *See supra* pp. 8-11. "It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). District courts in this Circuit, relying on *Mills*, have found that where a plaintiff is likely to succeed on the merits of a procedural due process claim, this deprivation of constitutional rights constitutes irreparable harm. *See, e.g.*, *Advance Am. v. FDIC*, 2017 WL 2672741, at *10 (D.D.C. Feb. 23, 2017); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 104–05 (D.D.C. 2012); *Goings v. Court Servs. & Offender Supervision Agency for D.C.*, 786 F. Supp. 2d 48, 79 (D.D.C. 2011).

As a result of the SDN designation, and the inability to obtain a general or specific license from OFAC, the Company is in dire financial situation and has had to terminate the employment of 33 personnel. *See* Basrai Decl. ¶ 19. "[C]ourts have found irreparable harm where the movant has made a strong showing that the economic loss would significantly damage its business above and beyond a simple diminution in profits." *See Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 43 (D.D.C. 2000) (collecting cases). In addition, given the seven-month delay in responding, Strait Shipbrokers has lost additional personnel who have lost hope that the business will remain viable. *See* Basrai Decl. ¶ 19. The Company is down to approximately six employees. *Id.* This interference with Plaintiffs' ability "to recruit and retain employees to build—or even maintain—its business" likewise supports the conclusion that the SDN designations have caused Plaintiffs irreparable harm. *See, e.g.*, *TikTok*, 507 F. Supp. 3d at 113.

Strait's principal is also facing loss of his visa allowing him to work and live in Singapore, requiring him and his family to return to India – where he has not lived in over 20 years. *See*

14

Basrai Decl. ¶ 20.  Given that Mr. Basrai will face significant, unrecoverable losses should the SDN designation continue, he is "likely to suffer at least some degree of irreparable injury absent preliminary injunctive relief." *Feinerman*, 558 F. Supp. 2d at 50–51.

The designation of Plaintiffs as SDNs has deprived the Company of its property and other rights, including its rights to access U.S. capital markets, financial institutions, business partners, employees, and other members of the public, its ability to effectively operate in its chosen business, and its reputation and professional goodwill.  It is well established that loss of "customer trust and goodwill" constitutes irreparable harm.  *See, e.g.*, *Morgan Stanley DW Inc. v. Rothe,* 150 F. Supp. 2d 67, 77 (D.D.C. 2001).

In the absence of a preliminary injunction, Plaintiffs will continue to suffer irreparable harm, including being driven out of business and the loss of livelihood of Mr. Basrai, his family, and the Company's employees.  *See* Basrai Decl. ¶¶ 19-20; Daphne Decl. ¶ 6.  If Plaintiffs are not delisted promptly and without further delay, the Company will cease to exist, resulting in the loss of jobs of at least 33 people—and impact on the livelihood of their respective families.  *See* Basrai Decl. ¶¶ 19-20.  The harm suffered by Plaintiffs is accordingly irreparable.  Such injuries, particularly where damages cannot be recovered due to sovereign immunity, constitute irreparable harm.  *See Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (recognizing that the APA does not waive sovereign immunity for damages).

## C.  The Balance of Equities and the Public Interest Weigh in Plaintiffs' Favors

In balancing the equities, the court "weighs the harm to [Plaintiffs] if there is no injunction against the harm to [Defendants] if there is." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).  And where the Government is the opposing party, the Government's interest and the public interest merge.  *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The balance of equities favors the granting of a preliminary injunction lifting the

designation, because while the harm to the Plaintiffs of not granting such relief would be catastrophic, the granting of such relief would have no adverse impact on Defendants.  The State Department would retain the ability to re-impose sanctions immediately if a valid legal basis to do so should arise.

"There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters*, 838 F.3d at 12 (collecting cases).  Nor would the public interest be served by allowing Defendants to dispense with the procedural requirements of the Fifth Amendment and the APA.  *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest.  The Constitution does not permit Congress to prioritize any policy goal over the Due Process Clause." (citations omitted)).

### D.   The Court Should Order Expedited Discovery of the Administrative Record

In order for the Court, and Plaintiffs, to be fully informed at the preliminary injunction hearing, the Court should order Defendants to produce the full administrative record relating to the decisions at issue in this case, including without limitation all documents and information that were considered by the State Department or the other Defendants in connection with the SDN designation, within seven days of the filing of this motion.

Federal courts have broad discretion to order expedited discovery.  *See, e.g.*, *Garnett v. Zeilinger*, 2017 WL 8944640, at *1-2 (D.D.C. Dec. 15, 2017) (citing *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007)).  Expedited discovery "may be particularly appropriate in case 'involving requests for a preliminary injunction.'"  *Garnett*, 2017 WL 8944640, at *2 (quoting Federal Rule of Civil Procedure 26(d) advisory committee's notes to 1993 amendment).  To determine whether a request for expedited discovery should be granted, courts look to five factors: "(1) whether a motion for preliminary injunction is pending, (2) the discovery request's breadth, (3) the purpose

for requesting expedited discovery, (4) the burden on the defendant to comply with the requested discovery, and (5) how far in advance of the typical discovery process the request is made." *Garnett*, 2017 WL 8944640, at *1.  These factors strongly support awarding the limited expedited discovery requested by Plaintiffs here.

A preliminary injunction is pending, Plaintiffs' request is limited to the administrative record, the purpose of the expedited discovery is so Plaintiffs can have the information necessary to defend themselves, it will be a limited burden on Defendants, and Plaintiffs have been asking for the administrative record for over seven months and have not received it.

Accordingly, it is appropriate for the Court to order Defendants to produce the full administrative record within seven days of the filing of this motion.

## CONCLUSION

Plaintiffs respectfully urge the Court to grant this motion and to issue as soon as possible a preliminary injunction and expedited discovery.

Dated: July 22, 2021

Respectfully submitted,

By: /s/ Christopher D. Man.
Christopher D. Man (Bar No. 453553)
Cari N. Stinebower (Bar No. 457147)
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C.  20036
(202) 282-5000 (phone)
(202) 282-5100 (fax)
CMan@winston.com

*Counsel for Plaintiffs Strait Shipbrokers Pte. Ltd. and Murtuza Mustafa Munir Basrai*